**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL FOSTER,** ) | Case No. 1:05 CV 1009 |
| ) | |
| Petitioner, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **OF OPINION** |
| **CHRISTINE M. MONEY,** ) | |
| ) | |
| Respondent. ) | |

Before the Court is the Report and Recommendation of Magistrate Judge William H. Baughman, Jr. ("R&R") (**ECF No. 15**). Pending is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By A Person In State Custody, filed by Petitioner Michael Foster (the "Petition") (**ECF No. 1**). For the following reasons, the Court **OVERRULES** the objections of the Petitioner and Respondent, **ADOPTS** the R&R in its entirety, and **CONDITIONALLY GRANTS** the writ.

**I.**

This habeas case involves a guilty plea, entered by a defendant who made clear to the sentencing judge and counsel that he was entering the plea out of fear for his life in the Cuyahoga County Jail. Foster, a protective custody prisoner,[1] was transferred from the Marion

---

[1] Foster was placed in protective custody based on his having saved several prison guards during the infamous 1993 Lucasville prison riot.

Correctional Facility to the County Jail on September 11, 2002, to answer and await trial on the underlying criminal charges.[2]  Upon his arrival at the County Jail, he immediately complained to jail officials about being mixed with maximum security general population prisoners, and the lack of protection for prisoners like himself – who alerted the general population to their protective custody status simply by wearing the distinctive uniforms they were required to wear (orange stripes down the side of their pants).  In the Jail, during transport to the courthouse and while being held in courtroom cells over the next two months, Foster claims that he was harassed, threatened and physically and sexually assaulted by general population prisoners with whom he was improperly intermingled and who were obviously aware of his protective custody status.[3]  He made all of this known to the sentencing judge (through counsel, a *pro se* motion he filed detailing the abuse, and his testimony at three separate proceedings), telling her that he would do anything, including enter a guilty plea and accept the maximum term of imprisonment <u>on all charges</u>, if she would only transfer him out of the County Jail immediately.  Indeed, he appeared at the sentencing hearing with a cast on his arm, pointed the cast out to the judge and reminded her that he was not pleading guilty to the crimes because he was in fact guilty of them, but because it was the only way to escape the violence to which he was being subjected at the

---

[2]Foster was indicted on multiple charges of aggravated robbery, felonious assault, kidnapping and attempted aggravated murder with firearms specifications.

[3]Foster has brought a § 1983 action against Sheriff Gerald McFaul, Warden Kevin McDonough, Officer Eric Ivey, Officer Rudy Milovanovic and others at the County Jail for failing to protect him from assaults by other inmates during his two-month confinement at the Jail, inadequate medical treatment, and assault by the two officers.  *Foster v. McFaul, et al.*, Case No. 1:04CV1032 (O'Malley, D.J.).  District Judge O'Malley recently issued a decision denying summary judgment to Sheriff McFaul and Warden McDonough on the claim that they failed to protect Foster from physical and sexual assaults by other inmates; and denying summary judgment to Officers Ivey and Milovanovic on the claim that they assaulted Foster while he was under their custody at the Jail.  *Id. ECF No. 230*.

Jail.  Notwithstanding this record, the judge found Foster's guilty plea to be "voluntary" and sentenced him to 58 years in prison.

Upon this constitutional infirmity, Foster was represented on direct appeal by an attorney who did not meet with Foster until seven days before the appellate brief was due. Foster insisted that she challenge the voluntariness of his plea on the basis that he pled guilty solely to escape physically threatening conditions in the County Jail.  After filing the brief without raising Foster's proposed claim, counsel sent a letter to him explaining that she could not raise the issue because there was no evidence of it in the trial record.[4]  Moreover, after writing this letter, she ceased all communication with him, failing to inform him of the appeals court's ruling and his right to seek a discretionary appeal in the Ohio Supreme Court.

This debacle could have been rectified by the state appeals court when it addressed Foster's deftly written, timely application for reopening of direct appeal under Ohio Rule of Appellate Procedure 26(B).  App. R. 26(B) expressly allows a criminal defendant to "apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel" within 90 days after journalization of the appellate judgment.  App. R. 26(B)(2)(b).  Here, Foster argued that the trial court erred when it accepted his guilty plea despite notice that he was suffering assaults as a result of the State's failure to protect him from general population inmates; that trial counsel was ineffective for failing to better relate to the court and resolve his safety concerns, effectively forcing him to enter an involuntary guilty plea to escape the violence; and that appellate counsel was ineffective

---

[4]Counsel instead challenged, unsuccessfully, the voluntariness of Foster's plea on the basis that the trial judge failed to adequately explain all the charges to him.  This argument set Foster up for an additional *res judicata* ruling by the same court that adjudicated his App. R. 26(B) application.

for failing to challenge the voluntariness of his plea on the requested basis even though the constitutional violation was apparent on the record before the trial court.

The appeals court decided, however, that Foster's claim was barred by *res judicata* because he failed to raise it on direct appeal to the Ohio Supreme Court, and that he failed to show that the application of *res judicata* to his claims would be unjust, despite appellate counsel's obvious malfeasance.[5] Notwithstanding this ruling, the appeals court conducted a cursory review of the merits of Foster's claims, concluding that Foster:

> failed to demonstrate a genuine issue as to whether he was deprived of the effective assistance of appellate counsel as mandated by App. R. 26(B)(5). The issue of whether Foster's plea of guilty was entered in a voluntary, knowing, and intelligent manner was previously raised on appeal and found to be without merit and is thus barred from further review upon application of the doctrine of res judicata. . . . In addition, Foster has failed to demonstrate that the condition of his physical safety adversely affected his decision to enter a plea of guilty or that any right, as provided under the Sixth Amendment to the United States Constitution, was violated. Foster has failed to demonstrate that the outcome of his appeal would have been different had appellate counsel raised the three proposed assignments of error.

*State v. Foster*, No. 82207, 2004 WL 1067946, at *2 (Ohio App. 8 Dist. May 12, 2004, as amended *nunc pro tunc* May 18, 2004) (citations omitted). Without opinion, the Ohio Supreme dismissed the appeal as not involving any substantial constitutional question.

Consequently, Foster filed the instant Petition raising two claims. First, he contends that his guilty plea was involuntary because it was made under fear for his life in the County Jail. Second, he contends that he received ineffective assistance of appellate counsel

---

[5]In *State v. Murnahan*, 63 Ohio St.3d 60 (1992), the Ohio Supreme Court ruled that *res judicata* may bar a claim of ineffective assistance of appellate counsel unless circumstances render the application of the doctrine unjust. It is difficult to imagine precisely what type of circumstance the appeals court would consider an unjust application of the doctrine of *res judicata*, if not this case – and there is scant case law fleshing out this part of the *Murnahan* rule.

because, while she raised the argument that his guilty plea was involuntary, she based that argument on a claim that the trial judge did not adequately explain the charges to Foster, not that he entered the plea to save himself from harm, as he insisted she do and was apparent on the record.

The Magistrate Judge, having reviewed the briefs, issued an exhaustive, well-written R&R. First, the Magistrate Judge had to determine whether Foster procedurally defaulted his ineffective assistance of appellate counsel claim. Although the Magistrate Judge explored the veritable Catch-22 *pro se* defendants face when attempting to raise the issue of appellate counsel's effectiveness in App. R. 26(B) applications,[6] he concluded that Foster did in fact procedurally default his claim. He determined, however, that appellate counsel's malfeasance constituted "cause" to excuse his procedural default, and that he was prejudiced thereby. The Magistrate Judge then reviewed the claim on the merits and recommended that the Court find that Foster received ineffective assistance of appellate counsel both for failing to adequately investigate and assert as error the circumstances of his plea which were apparent on the record, and for failing to communicate with Foster following the decision in his direct appeal – depriving him of the opportunity to appeal that decision, and counsel's ineffectiveness, to the Ohio Supreme Court. The Magistrate Judge also recommended that the Court find that Foster's

---

[6] Although criminal defendants in Ohio appear to have two procedural avenues for challenging appellate counsel's effectiveness (on direct discretionary appeal to the Ohio Supreme Court, or in a App. R. 26(B) application), they often have only one. The claim must be presented to the Ohio Supreme Court on direct appeal. Only if a defendant is represented by the same counsel in both the Ohio Court of Appeals and the Ohio Supreme Court on direct appeal, may he raise the claim in a later App. R. 26(B) application. As the Magistrate Judge pointed out, App. R. 26(B) provides a "detailed roadmap" for raising ineffective assistance of appellate counsel claims, and apparently dupes many criminal defendants into thinking that that is the appropriate vehicle for bringing those claims. Frankly, it would be helpful if App. R. 26(B) would alert defendants – most of whom proceed *pro se* after the first appeal of right - to this procedural fact.

plea was not voluntary, but a response to the physical violence directed against him in the County Jail, and that the decision of the trial court, and then the state appeals court, that it was "voluntary" was an unreasonable application of clearly established federal law.

Foster objects to the Magistrate Judge's determination that he procedurally defaulted his ineffectiveness claim by failing to raise it on direct appeal to the Ohio Supreme Court. Foster also objects to the Magistrate Judge's use of the AEDPA standard to review a decision by the state court not on the merits, insisting that the proper standard of review is *de novo*. The State objects to the Magistrate Judge's recommendation that Foster's guilty plea was involuntary due to duress because it "is not supported by the facts where Foster's allegations of disabling fear was (sic) not credible." *ECF No. 18*, at 3. The Federal Magistrates Act requires the district court to conduct a *de novo* review of those portions of the R&R to which the parties object. 28 U.S.C. § 636(b)(1); *Crotts v. Bradshaw*, No. 1:06CV2119, 2007 WL 3125127 (N.D. Ohio Oct. 24, 2007).

Regarding Foster's first objection, Foster raises some excellent points as to why the application of *res judicata* as a bar to reviewing ineffective assistance of appellate counsel claims in a timely App. R. 26(B) application makes no practical sense.[7] However, I believe the Magistrate Judge correctly concluded, based on present case law, that Foster procedurally defaulted the claim by failing to raise it on direct appeal to the Ohio Supreme Court – but that his counsel's failure to notify him of the appeals court's ruling and his right to appeal that ruling

---

[7]The application of *res judicata* as a bar to reviewing ineffective assistance of appellate counsel claims raised in timely filed App. R. 26(B) applications is an issue currently before the Ohio Supreme Court in *State v. Davis*, No. 2007-0325. In that case, the defendant raised his Sixth Amendment claim both to the Ohio Supreme Court on direct review and in a timely filed App. R. 26(B) application. Neither court addressed the merits of his claim.

-6-

constituted "cause" to excuse the procedural default, and the failure of the state appeals courts to review his claim constituted "prejudice."  As such, I overrule the objection.

The Court also overrules Foster's objection that the Magistrate Judge incorrectly used the AEDPA standard to review the appeals court's ruling.  While the Court agrees that it may review, *de novo*, constitutional claims that were not properly reviewed on the merits by the state court, *Maples v. Steagall*, 340 F.3d 433 (6th Cir. 2003), that is not the case here.  The appeals court conducted a perfunctory merits review of Foster's ineffectiveness claim.  Thus, the Magistrate Judge properly reviewed the claim under the AEDPA standard.

The Court overrules the Respondent's objection as well.  The trial judge never found that Foster's allegations of harm were not credible.  Rather, the trial judge, whose responsibility it is to ensure that guilty pleas are voluntary, paid little more than lip service to Foster's safety concerns, inquiring of a deputy, who didn't know the answer, what type of safeguards the County Jail had in place for protective custody prisoners like Foster – and there is nothing on the record to show that she made any further investigation into his allegations.  Given the record before her, the sentencing judge should never have accepted Foster's guilty plea.

Accordingly, the Court hereby **ADOPTS** the Magistrate Judge's R&R in its entirety, **OVERRULES** the objections of Petitioner and Respondent, and **CONDITIONALLY GRANTS** the habeas petition.  The Court hereby **DIRECTS** that Petitioner Michael Frost be brought before the state court judge within 120 days of the issuance of this order to either have a trial date set, or to tender a new plea.

(Continued on next page)

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster     November 8, 2007*
**Dan Aaron Polster
United States District Judge**